IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD LEE ROGERS,<br><br>Defendant. | CR 23-112-BLG-SPW<br><br><br>ORDER |

Defendant Richard Lee Rogers was charged on September 21, 2023, with one count of threatening to injure and murder a member of the United States Congress in violation of 18 U.S.C. § 115(a)(1)(B), (b)(4), and one count of making harassing telephone calls in violation of 47 U.S.C. § 223(a)(1)(E). (Doc. 1). On April 1, 2024, Rogers moved to dismiss the indictment on the ground that the statutes, as applied to Rogers, violate the First Amendment because he was engaged in political speech. (Doc. 32). The Government opposes the motion, arguing that it improperly asks the Court to decide a question reserved for the jury. (Doc. 37 at 9–12). The Government also maintains that Rogers's actions fall outside the scope of the First Amendment's protections. (*Id.* at 8–9, 12–15). Rogers did not file a reply.

For the following reasons, the Court denies the motion.

//

//

## I.  Background[1]

On February 3, 2023, the office of the then-Speaker of the U.S. House of Representatives Kevin McCarthy received a "high volume" of phone calls that seemed to be from the same number. The caller identified himself as Richard Rogers of Billings, Montana. Multiple employees in McCarthy's office answered the calls and spoke to Rogers, who continued to call through the morning and into the afternoon.

The staff aide interviewed for the FBI report described the calls as Rogers yelling and swearing at employees, then hanging up. The aide said the calls were abrasive and angry and escalated as the day progressed. At first, Rogers's comments reportedly "were sexual and vulgar," including telling employees to "suck his dick" and that he would "put his dick in them." Rogers also allegedly stated he would perform those sex acts on McCarthy. Rogers later supposedly expressed his frustration with the Chinese spy balloon. In response, the aide reported that employees gave Rogers the reasons it was not being shot down. "Rogers replied, 'I could shoot you' and ['I could shoot him,'" which the aide understood as referring to McCarthy.

The aide also reported that, at one point, Rogers stated, "I'm going to fucking kill him for not shooting down the Chinese balloon," in reference to McCarthy. The

---

[1] The facts are from the FBI report of the incident that Rogers attached to his motion. (Doc. 33).

aide said the statement, as well as Rogers's alleged persistence in making continued calls throughout the day, led the aide to report the incident to the U.S. Capitol police. When asked by the FBI agent how certain he was on a scale of one to ten that Rogers used those exact words (one being he had no recollection of the words and ten being absolutely certain those words were used), the aide said an eight or nine. When asked how certain he was on a scale of one to ten if Rogers's words threatened bodily harm, injury, or death to McCarthy (one being completely unsure and ten being absolutely certain), the aide replied a ten. Rogers disputes that he threatened to injure McCarthy. (Doc. 32 at 6).

Because of Rogers's high volume of calls, McCarthy's office decided to shut down the main public line that afternoon.

Rogers was indicted on September 12, 2023 in this Court.

## II.    Legal Standard

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). On a motion to dismiss, the Court is limited to the face of the indictment and must presume the truth of the allegations in the charging instrument *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996). The Court cannot consider evidence not appearing on the face of the indictment. *Id.*

A motion to dismiss under Rule 12(b) "is appropriately granted when it is based on questions of law rather than fact." *United States v. Schulman*, 817 F.2d 1355, 1358 (9th Cir. 1987). "'[I]f the pretrial motion raises factual questions associated with the validity of the defense, the district court cannot make those determinations.'" *United States v. Schafer*, 625 F.3d 629, 635 (9th Cir. 2010) (quoting *United States v. Shortt Acct. Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1985)). Additionally, "[a] defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence." *Jensen*, 93 F.3d at 669.

## III.   Analysis

The First Amendment provides that "Congress shall make no law … abridging the freedom of speech." U.S. Const. amend. I.  "The hallmark of the protection of free speech is to allow 'free trade in ideas'—even ideas that the overwhelming majority of people might find distasteful or discomforting." *Virginia v. Black*, 538 U.S. 343, 358 (2003) (quoting *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting)).  The First Amendment protects symbolic or expressive conduct as well as actual speech. *Id.*  "The protections afforded by the First Amendment, however, are not absolute, and [courts] have long recognized that the government may regulate certain categories of expression consistent with the Constitution." *Id.*

4

Rogers was indicted under 18 U.S.C. § 115(a)(1)(B), (b)(4) for the statements he made to the staff aide on February 3, 2023, that he was going to injure and/or kill McCarthy (Count 1), and under 47 U.S.C. § 223(a)(1)(E) for the repeated phone calls he made the same day to McCarthy's office that resulted in the public access line being shut down (Count 2). (Doc. 1).

He now lodges as as-applied challenge to the laws. "An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998). Rogers maintains the actions at issue in both charges are protected by the First Amendment. (Doc. 32 at 6).

As to Count 1, the Government asserts that whether his statement is a true threat is a question for the jury. (Doc. 37 at 6–12). As to Count 2, the Government argues the action at issue—the repeated calls—is non-expressive conduct—not speech—and therefore outside the scope of the First Amendment's protections. (*Id.* at 14).

The Court will address the arguments on each count in turn.

A.   *Threat to a Member of Congress, 18 U.S.C. § 115(a)(1)(B), (b)(4)*

18 U.S.C. § 115(a)(1)(B) prohibits a person, in part, from threatening to assault or murder a United States official with the intent to impede, intimidate, and interfere with such official engaged in the performance of official duties, or with the

intent to retaliate against such official on account of their performance of official duties. The former carries a six-year maximum sentence, and the latter carries a 10-year maximum sentence. 18 U.S.C. § 115(b)(1)(4).

"True threats" generally are not entitled to First Amendment protection. *Watts v. United States*, 394 U.S. 705, 708 (1969) (per curium); *accord R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992) ("[T]hreats of violence are outside the First Amendment[.]"). "'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black*, 538 U.S. at 359. The prohibition on true threats "'protect[s] individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.'" *Id.* at 360 (quoting *R.A.V.*, 505 U.S. at 388). A true threat does not include "political hyperbole." *Watts*, 394 U.S. at 708.

Whether a particular statement is a true threat depends on both an objective and subjective analysis. *United States v. Keyser*, 704 F.3d 631, 638 (9th Cir. 2012). The objective analysis looks at "whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault." *Id.* (internal citation and quotation marks omitted). The subjective analysis assesses whether the speaker

subjectively intended to threaten. *Id.* The speaker does not need to intend to carry out the threat. *Id.*

Whether a statement amounts to a true threat or is protected political speech is a question of fact generally reserved for the trier of fact. *See United States v. Merrill*, 746 F.2d 458, 462 (9th Cir. 1984), *overruling on other grounds recognized by United States v. Hanna*, 293 F.3d 1080, 1088 n.5 (9th Cir. 2002); *United States v. Zavalidroga*, 156 F.3d 1241, 1998 WL 403361, at *1 (9th Cir. July 7, 1998); *United States v. Hinkson*, 349 F. Supp. 2d 1350, 1358 (D. Idaho 2004); *see also Fogel v. Collins*, 531 F.3d 824, 829 (9th Cir. 2008) ("Deciding whether political speech is protected political hyperbole or an unprotected true threat can be an issue for a jury, particularly in cases of criminal prosecution."); *United States v. Carrier*, 672 F.2d 300, 306 (2d Cir. 1982) ("[W]e believe that whether words used are a true threat is generally best left to the triers of fact."). "A few cases may be so clear that they can be resolved as a matter of law ... but most cases arising under this statute present widely varying fact patterns that should be left to the trier of fact." *Merrill*, 746 F.2d at 462. The inquiry is "considered in light of [the alleged threats'] entire factual context, including the surrounding events and reactions of the listeners." *United States v. Orozco-Santillan*, 903 F.2d 1262, 1265 (9th Cir. 1990), *overruling on other grounds recognized by Hanna*, 293 F.3d at 1088 n.5 (internal citation and quotation marks omitted). Thus, the district court should "dismiss the indictment

only if the language was so facially insufficient that no reasonable jury could find that the language amounted to a true threat." *Zavalidroga*, 1998 WL 403361, at *1; *see also Carrier*, 672 F.2d at 306 ("Only where the factual proof is insufficient as a matter of law should the indictment be dismissed.").

Whether Rogers's statement is a true threat or protected political speech is a question for the trier of fact. As an initial matter, the record is not complete enough for the Court to undertake the true threats analysis. Since the call was not recorded, the only account of the call is the FBI report. Notwithstanding the fact that the Court can only consider the indictment in deciding the motion to dismiss, the Court cannot confidently rule that no reasonable jury could find that Rogers's statement amounted to a true threat based on a second-hand summary of the call. Rogers even refutes the veracity of the aide's recollection that Rogers threatened to injure McCarthy, further justifying the need for a trial to develop the record.

Assuming the Court could consider the FBI report and that it completely and accurately recounted Rogers's statement, whether the statement represented a true threat is too factually-intense of an inquiry for the Court to make. That determination is the province of the trier of fact.

Accordingly, the Court denies the motion as to Count 1.

B.    *Harassing Calls, 47 U.S.C. § 223(a)(1)(E)*

47 U.S.C. § 223(a)(1)(E) prohibits making "repeated telephone calls or repeatedly initiat[ing] communication with a telecommunications device, during which conversation or communication ensues, solely to harass any specific person[.]"

"Laws or policies that target conduct, but that burden speech only incidentally, may be valid." *United States v. Waggy*, 936 F.3d 1014, 1017 (9th Cir. 2019).  The Ninth Circuit has not decided whether § 223(a)(1)(E) targets speech or conduct. *See United States v. Stahlnecker*, No. 20-50173, 2021 WL 5150046, at *5 (9th Cir. Nov. 5, 2021) ("No Supreme Court or Ninth Circuit precedent has clearly established the alleged unconstitutionality of § 223[.]").  The Third Circuit held § 223(a)(1)(E) constitutionally criminalizes conduct, namely the placement of interstate telephone calls to harass, abuse, or annoy. *United States v. Lampley*, 573 F.2d 783, 787 (3d Cir. 1978).[2]  Though the nature of the ensuing conversation and whether it contains harassing language can be relevant to the question of intent, it also "can have no bearing on the constitutionality of the section since its narrow requirement precludes the proscription of mere communication." *Id.*; *see also* Karl Oakes, 86 *Corpus Juris*

---

[2] The statute under which Lampley was charged—47 U.S.C. 223(1)(D) (1968)—prohibits the same conduct as the current version of the subsection under which Rogers is charged.   The version in effect when *Lampley* was decided prohibits a person from "mak[ing] repeated telephone calls, during which conversation ensues, solely to harass any person at the called number[.]"

*Secundum*, § 180 (March 2024) ("Harassing language in the ensuing conversation is not required" under § 223(a)(1)(E)).

Relying in part on *Lampley*, the Ninth Circuit rejected an as-applied challenge based on the First Amendment to an analogous Washington statute that criminalizes telephone harassment.[3] *Waggy*, 936 F.3d at 1019–20. The Ninth Circuit held that the Washington statute "requires proof that the defendant specifically intended to harm the victim when initiating the call," thus ensuring that the defendant "was convicted for his conduct, not for speech protected by the First Amendment." *Id.* at 1020. Since the jury found the defendant placed the calls with the specific intent to harass the victim, his convictions were constitutional. *Id.* "That Defendant included some criticism of the government does not necessarily imbue his conduct with First Amendment protection." *Id.* at 1019.[4]

---

[3] Washington Revised Code § 9.61.230(1) provides, in relevant part:
(1) Every person who, with intent to harass, intimidate, torment or embarrass any other person, shall make a telephone call to such other person:
(a) Using any lewd, lascivious, profane, indecent, or obscene words or language, or suggesting the commission of any lewd or lascivious act; or
(b) Anonymously or repeatedly or at an extremely inconvenient hour, whether or not conversation ensues; or
(c) Threatening to inflict injury on the person or property of the person called or any member of his or her family or household;
is guilty of a gross misdemeanor ...."
[4] The Ninth Circuit in an unpublished opinion also rejected a defendant's First Amendment challenge to his conviction by a jury for violating § 223(a)(1)(D) because the statute criminalizes only conduct, not speech. *United States v. Sandhu*, 740 F. App'x 595, 595 (9th Cir. 2018). Section 222(a)(1)(D) prohibits "mak[ing] or caus[ing] the telephone of another repeatedly or continuously to ring, with the intent to harass any person at the called number." Because § 222(a)(1)(D) does not contain communication requirement like § 223(a)(1)(E), and therefore is more divorced from speech, *Sandhu* is not as useful here. The Court notes, though, that *Waggy* cites *Sandhu* in a footnote as persuasive, though not binding. *Waggy*, 936 F.3d at 1020 n.6.

*Waggy* is the closest the Ninth Circuit has come to ruling on the constitutionality of § 223(a)(1)(E). Thus, the Court adopts its logic as a guide for the analysis here. Further, since *Waggy* approvingly cites *Lampley*, the Court also finds *Lampley* persuasive. *Waggy*, 936 F.3d at 1020 (citing *Lampley*, 573 F.2d 787).

Rogers analogizes to the D.C. Circuit's suggestion in *United States v. Popa* that §223 targets expressive conduct protected by the First Amendment. (Doc. 32 at 7, 14 (citing 187 F.3d 672, 673 (D.C. Cir. 1999))). The Court declines to adopt *Popa*, as *Waggy* rejected *Popa*'s analysis as "against the great weight of authority," including that in the Ninth Circuit. *Waggy*, 936 F.3d at 1018–19, 1019 n.5.

Accordingly, under *Lampley* and *Waggy*, whether Rogers is guilty of the charged offense depends on whether he placed the calls on February 3, 2023, with the sole intent to harass the person at the called number, not whether the content of the calls was harassing. The charge against him regulates his conduct, not his speech, and is not protected by the First Amendment. Rogers's intent in placing the calls is a question for the jury, and dismissal by the Court at this stage is inappropriate.

Accordingly, the Court denies the motion as to Count 2.

## IV.   Conclusion

IT IS SO ORDERED that Defendant Richard Lee Rogers's Motion to Dismiss the Indictment (Doc. 31) is DENIED.

11

DATED this 29th day of April, 2024.

SUSAN P. WATTERS
United States District Judge