EVANGELO ARVANETES
Assistant Federal Defender
Federal Defenders of Montana
Billings Branch Office
175 N. 27th Street, Suite 401
Billings, Montana 59101
vann_arvanetes@fd.org
Phone: (406) 259-2459
Fax: (406) 259-2569
    Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD LEE ROGERS,<br><br>Defendant. | Case No. CR-23-112-BLG-SPW<br><br>**DEFENDANT'S MEMORANDUM TO DISMISS COUNT III IN THE INDICTMENT** |

COMES NOW Defendant RICHARD LEE ROGERS, by and through his counsel of record, the FEDERAL DEFENDERS OF MONTANA and EVANGELO ARVANETES, Assistant Federal Defender, and moves the Court for an order dismissing Count III in the Superseding Indictment in the above captioned case. (Doc. 43).

## STATEMENT OF FACTS

Richard Lee Rogers was initially charged in a two (2) count Indictment with threatening a member of the United States Congress with bodily injury in violation of 18 U.S.C. § 115(a)(1)(B), (b)(4) and making harassing telephone calls in violation of 47 U.S.C. § 223(a)(1)(E). On May 1, 2024, the Government filed a Superseding Indictment which contained a third count of making harassing phone calls in violation of 47 U.S.C. § 223(a)(1)(E).

According to discovery provided by the Government regarding Count III, it is alleged that on or about from December 2021 to - October 2022, Mr. Rogers made numerous calls to the FBI call center known as the National Threat Operations Center (NTOC) where he allegedly harassed employees at that office over the course of a number of months. The calls from Mr. Rogers to NTOC regarded various political issues and current events of the day and whether the FBI was doing anything about the issues he raised as the law enforcement arm of the United States Government.[1]

---

[1] Undersigned's note: for some of the approximate 150 calls, it is difficult to ascertain the content and/or context of the calls because they are very short in duration. *See* Exhibit A – thumb drive of NTOC calls from Mr. Rogers provided in discovery by the Government, filed separately and conventionally.

During the investigation into the allegations in Count III, phone records show that Mr. Rogers made a high volume of calls to NTOC over a 6-to-9-month period. These calls numbered at approximately 200 calls of which undersigned counsel has received from the Government 150 of those calls which were recorded. (*See* Exhibit A – Phone Calls, filed separately and conventionally).

The argument made in the present memorandum is that Count III (47 U.S.C. § 223(a)(1)(E)), as applied to Mr. Rogers, violates his First Amendment right under the United States Constitution, because the statute impacts political speech and is not a content-neutral regulation of speech as applied, and as such, fails to pass either strict or intermediate scrutiny.

The free speech clause of the Constitution has never been read to protect all speech. It is important to note that speech such as obscenity, fighting words, child pornography, incitement, and "true threats" is considered outside the protections of the First Amendment.

When a regulation hinders political speech, *Citizens United v. Federal Election Com'n,* 558 U.S. 310, 340 (2010), or discriminates against certain speech based on its content, *Simon & Schuster v.*

*Members of New York State Crime Victims Bd.,* 502 U.S. 105, 116 (1991), it applies strict scrutiny. It must determine whether the regulation is narrowly tailors to further a compelling state interest. *Federal Election Com'n v. Wisconsin Right to Life, Inc.,* 551 U.S. 449, 476 (2007).

When a regulation impacts speech mixed with conduct, *United States v. O'Brien,* 391 U.S. 367, 377 (1968), or incidentally impacts speech, *United States v. Albertini,* 472 U.S. 675, 689 (1985), this Court applies intermediate scrutiny. It asks whether the regulation "promotes a substantial government interest that would be achieved less effectively absent the regulation." *Id.*

Count III of the superseding indictment fails to survive both strict and intermediate scrutiny as applied under the present set of facts.

The interest in protecting public officials from annoying, harassing, or abusive speech is not compelling, and the interest in protecting them from true threats was not implicated. Here, NTOC is a law enforcement entity and an arm of the United States Government. Any interest in protecting private citizens from annoying, harassing, or abusive speech could be equally well-served

by a statute that does not apply to political speech directed at public officials such as FBI employees employed at NTOC.

For similar reasons, Count III of the superseding indictment section 223(a)(1)(E) does not survive intermediate scrutiny, as the D.C. circuit found in *United States v. Popa,* 187 F.3d 672, 673 (D.C. Cir. 1999). Applying intermediate scrutiny, the district court held the statute constitutional on its face as regulating potentially expressive conduct to serve a compelling state interest. In this case, the appellate court, also applying intermediate scrutiny, reversed, finding the statute unconstitutional as applied to appellant's conduct, since it did not exclude those who intended to engage in public or political discourse.

Based upon the legal analysis below, this Court should find the statute unconstitutional as applied to Mr. Rogers' alleged conduct in Count III of the Superseding Indictment. (Doc. 43).

## ANALYSIS

Title 47 U.S.C. § 223(a)(1)(E), as applied to Mr. Rogers, violates the First Amendment because this statute impacts political speech and is not a content-neutral regulation of speech. Further, it fails to pass either strict scrutiny or intermediate scrutiny.

The First Amendment reads, in pertinent part, "Congress shall make no law . . . abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. Amend. I. "The hallmark of the protection of speech is to allow 'free trade in ideas' – even ideas that the overwhelming majority of people might find distasteful or discomforting." *Virginia v. Black,* 538 U.S. 343, 358 (2003) (quoting *Abrams v. United States,* 250 U.S. 616, 630 (1919). Content-based limitations on speech "raise[] the specter that the Government may effectively drive certain ideas or viewpoints from the marketplace." *Simon & Schuster,* 502 U.S. at 116. Thus, such "regulations are presumptively invalid." *Id.* at 115.

In particular, "[t]he First Amendment affords the broadest protection to . . . political expression in order 'to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Buckley v. Valeo,* 424 U.S. 1, 14 (1976) (quoting *Roth v. United States,* 354 U.S. 476, 484 (1957)). This reflects our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and open-wide, and that it may well include vehement, caustic, and sometimes

unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan,* 376 U.S. 254, 270 (1964). "When a law burdens core political speech," courts "applying 'exacting scrutiny,' and . . . uphold the restriction only if it is narrowly tailored to serve an overriding state interest." *McIntyre v. Ohio Elections Com'n,* 514 U.S. 334, 347 (1996).

Nonetheless, "[t]here are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem. *Chaplinsky v. New Hampshire,* 315 U.S. 568, 571-72 (1942). This includes harassing calls to a government entity such as the FBI and its call center NTOC.

"[A] state is, ordinarily, denied the power to prohibit dissemination of social, economic, and political doctrine which a vast majority of its citizens believes to be false and fraught with evil consequences." *Whitney v. California,* 274 U.S. 357, 374 (1927). Thus, "the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or law violation *except* where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio,* 395 U.S. 444, 447 (1969). Title

47 U.S.C. § 223(a)(1)(E) must survive strict scrutiny, yet within the present set of facts in Count III, Mr. Rogers at times vitriolic comments and language to NTOC is protected political speech. Thus as applied to Mr. Rogers' set of facts in Count III, this Court should dismiss Count III as a violation of free speech.

This argument applies with even greater force to the First Amendment. As the caselaw amply demonstrates, this is far from the first time a court has been called upon to suppress the type of rhetoric engaged in by Mr. Rogers. Yet the history of First Amendment jurisprudence is filled with examples wherein the courts have safeguarded free expression, even of ideas that many "citizens believe[d] to be false and fraught with evil consequences." *Whitney,* 274 U.S. at 374. Even in light of the current state of polarization, the suppression of ideas is no more justified now than it was during past times of unrest, upheaval, or societal tension.

To survive strict scrutiny, these sections must be "narrowly tailored to further a compelling interest." *Wisconsin Right To Life, Inc.,* 551 U.S. at 476. Section 223(a)(1)(E) for example applies to calls made with intent to annoy, abuse, threaten, or harass both public and private citizens.

Nevertheless, the interest in protecting public officials from annoying, harassing, or even verbally abusive political speech is a completely different matter. In the political realm, the intent to "verbally abuse a public official for voting a particular way on a public bill, annoy him into changing a course of public action, or harass him until he addresses the problems previously left unaddressed" is legitimate. *Popa,* 187 F.3d at 676-77. And the interest in suppressing this sort of political speech directed at public officials is not at all compelling. To the contrary, "the First Amendment affords the broadest protection to such political expression." *McIntyre,* 514 U.S. at 345. The interest in protecting private citizens from harassing, annoying, or abusive phone calls, to the extent it is compelling, "would be equally served if the statute *did not* encompass 'public or political discourse [intended to] irritate, bother, or insult.'" *Popa,* 187 F.3d at 676. (emphasis added). It is therefore not necessary to serve any compelling interest.

Similarly, the intermediate scrutiny test for content-neutral statutes that incidentally burden speech requires that the statute "promote[] a substantial government interest that would be achieved less effectively absent the regulation." *Albertini,* 472 U.S. at 689.

Even under this more forgiving standard, this statute restricts speech beyond what "is essential to the furtherance of" any of the interests it serves. *O'Brien,* 391 U.S. at 377.

In *O'Brien,* the Court upheld a law prohibiting the burning of draft cards. *Id.* at 381. It could "perceive no alternative means that would more precisely and narrowly assure the continuing availability of issued Selective Service certificates than a law which prohibits their willful mutilation or destruction." *Id.* The same cannot be said for Rogers' Superseding Indictment. Hence, the District of Columbia Circuit held "the statute could have been drawn more narrowly, without any loss of utility to the Government, by excluding from its scope those who intend to engage in public or political discourse." *Popa,* 187 F.3d at 677.

Here, in contrast, Mr. Rogers made numerous calls to the FBI call center, a public Government entity between the months of December, 2021, and October, 2022, for the purpose of ". . . petition[ing] the Government for a redress of grievances," – a Right stated within the First Amendment of the Constitution. If convicted of this count within the superseding Indictment, Mr. Rogers would be found guilty under a statutory paradigm that clearly encroaches

upon protected political speech. Because any legitimate interest the statute serves could be equally served and more narrowly drawn by excluding from its scope those like Mr. Rogers who intend to engage in public or political discourse, the statute is unconstitutional as it is applied to him. As *Popa* summarizes conduct similar to Mr. Rogers' actions toward NTOC: "47 U.S.C. § 223(a)(1)(C) sweeps within its prohibitions telephone calls to public officials where the caller . . . has an intent to verbally 'abuse' a public official for voting a particular way on a public bill, 'annoy' him into changing a course of public action, or 'harass' him until he addresses problems previously left unaddressed." *Id.* at 676-677.

## Conclusion

Therefore, with regard to the approximately 150 telephone calls to NTOC, such statute cannot stand neither strict nor intermediate scrutiny because Mr. Rogers' conduct was political in nature (political discourse) with a public official for the purpose of addressing his grievances.

RESPECTFULLY SUBMITTED this 12th day of August, 2024.

    /s/ Evangelo Arvanetes
    EVANGELO ARVANETES
    Federal Defenders of Montana
      Counsel for Defendant

RESPECTFULLY SUBMITTED this 12th day of August, 2024.

/s/ Evangelo Arvanetes
EVANGELO ARVANETES
Federal Defenders of Montana
  Counsel for Defendant

## CERTIFICATE OF SERVICE
## L.R. 5.2(b)

I hereby certify that on August 12, 2024, a copy of the foregoing document was served on the following persons by the following means:

<u>  1, 2  </u>   CM-EDF
<u>     </u>   Hand Delivery
<u>  3  </u>   Mail
<u>     </u>   Overnight Delivery Service
<u>     </u>   Fax
<u>     </u>   E-Mail

1. CLERK, UNITED STATES DISTRICT COURT

2. JEFFREY K. STARNES
   THOMAS K. GODFREY
   Assistant United States Attorney
   United States Attorney's Office
   P.O. Box 3447
   Great Falls, MT  59401
        Counsel for the United States

3. RICHARD LEE ROGERS
        Defendant

/s/ Evangelo Arvanetes
EVANGELO ARVANETES
Federal Defenders of Montana
    Counsel for Defendant

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief is in compliance with Local Rule 12.1(e). The Brief's line spacing is double spaced. The brief is proportionately spaced, the body of the argument has a Bookman Old Style typeface, 14 point size and contains 2,002 words, excluding tables and certificates.

DATED this 12th day of August, 2024.

/s/ Evangelo Arvanetes
EVANGELO ARVANETES
Federal Defenders of Montana
Counsel for Defendant