IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD LEE ROGERS,<br><br>Defendant. | CR 23-112-BLG-SPW<br><br>ORDER |

Defendant Richard Lee Rogers was charged on September 21, 2023, with one count of threatening to injure and murder a member of the United States Congress in violation of 18 U.S.C. § 115(a)(1)(B), (b)(4), and one count of making harassing telephone calls in violation of 47 U.S.C. § 223(a)(1)(E). (Doc. 2). On April 1, 2024, Rogers moved to dismiss the indictment on the ground that the statutes, as applied to him, violate the First Amendment because he was engaged in political speech. (Doc. 31). On April 29, 2024, this Court denied the motion as to both counts. (Doc. 40).

On May 1, 2024, the Government filed a Superseding Indictment adding an additional count of making harassing telephone calls in violation of 47 U.S.C. § 223(a)(1)(E) (Count III). (Doc. 43). The count alleges Rogers made such harassing phone calls between December 2021 and October 2022. (*Id.* at 2–3).

1

On August 12, 2024, Rogers moved to dismiss Count III, asserting that the statute is unconstitutional as applied to him because it regulates his political speech and fails both strict and intermediate scrutiny. (Doc. 76). The Government opposes the motion, arguing that the charge criminalizes Rogers's conduct, not his speech, and therefore is constitutional. (Doc. 82). Rogers did not file a reply.

For the following reasons, the Court denies the motion.

## I. Background

### A. Counts 1 and 2[1]

Rogers was originally charged with one count of threatening to injure and murder a member of Congress in violation of 18 U.S.C. § 115(a)(1)(B), (b)(4), and one count of making harassing telephone calls in violation of 47 U.S.C. § 223(a)(1)(E). The charges stem from calls Rogers supposedly made to then-Speaker of the House of Representatives Kevin McCarthy on February 3, 2023.

One of McCarthy's staff aides who interviewed for the FBI report on the matter described the calls, which were not recorded, as Rogers yelling and swearing at employees, then hanging up. The aide said the calls were abrasive and angry and escalated as the day progressed. At first, Rogers's comments reportedly "were

---

[1] As mentioned, Counts I and II were the focus of Rogers's first motion to dismiss. Though Rogers is not challenging Counts I and II in this motion, the Court repeats the facts at issue in those counts because of the similarities between the arguments he made in the original motion and those that he makes in this one. These facts are taken from the Court's order on Rogers's first motion to dismiss. (Doc. 40).

2

sexual and vulgar." Rogers later allegedly expressed his frustration with the Chinese spy balloon. In response, the aide reported that employees gave Rogers the reasons it was not being shot down. Supposedly, "Rogers replied, 'I could shoot you' and [']I could shoot him,'" which the aide understood as referring to McCarthy.

The aide also reported that, at one point, Rogers stated, "I'm going to fucking kill him for not shooting down the Chinese balloon," in reference to McCarthy. The aide said the statement, as well as Rogers's alleged persistence in making continued calls throughout the day, led the aide to report the incident to the U.S. Capitol police. When asked by the FBI agent how certain the aide was on a scale of one to ten that Rogers used those exact words (one being he had no recollection of the words and ten being absolutely certain those words were used), the aide said an eight or nine. When asked how certain he was on a scale of one to ten if Rogers's words threatened bodily harm, injury, or death to McCarthy (one being completely unsure and ten being absolutely certain), the aide replied a ten. Rogers denies that he threatened to kill or injure McCarthy.

Also because of the high volume of calls from Rogers, McCarthy's office shut down the main public line that afternoon.

On April 1, 2024, Rogers moved to dismiss the indictment on the ground that the statutes, as applied to Rogers, violate the First Amendment because he was engaged in political speech. As to Count 1—which targets Rogers's supposed threat

3

to injure or kill McCarthy—Rogers disputed that he ever made such a threat/threats. Rather, he maintained that his statements were political speech protected by the First Amendment. As to Count 2—which targets the volume of calls Rogers made to McCarthy's office that day—Rogers argued it unconstitutionally criminalized his expressive conduct. In support of his position, Rogers cited to a D.C. Circuit case, *United States v. Popa*, 187 F.3d 672, 673 (D.C. Cir. 1999), which held that § 223 criminalizes expressive conduct protected by the First Amendment and fails to survive either intermediate or strict scrutiny.

On April 29, 2024, the Court denied the motion as to both counts. As to Count 1, the Court found that whether Rogers's statements were true threats or protected political speech is a question for the trier of fact. The Court reasoned that the record was not complete enough for the Court to undertake a true threat analysis, since the call was not recorded and the parties disputed the veracity of the aide's recollection of Rogers's statements. The Court also acknowledged that it could only consider the indictment, not outside evidence, on a motion to dismiss. As to Count 2, the Court held that Ninth Circuit precedent rejected *Popa* and seemed to indicate that § 223(a)(1)(E) regulates conduct rather than speech—namely, the placement of the calls rather than their the content—and therefore was not protected by the First Amendment, even if the content of the calls included political speech. The Court clarified that the question left for the jury was whether Rogers intended to harass

4

McCarthy's office when he repeatedly initiated the calls, regardless of what he said during the calls.

    *B.    Count 3*

On May 1, 2024, the Government filed a Superseding Indictment adding an additional count of making harassing telephone calls in violation of 47 U.S.C. § 223(a)(1)(E). (Doc. 43). According to the parties' briefing, Rogers called the FBI's National Threat Operations Center ("NTOC") public tip line at least 150 times between December 2021 and October 2022, the recordings of which were filed with the Court. (*See* Doc. 77 at 2 & n.1; Doc. 82 at 5; Doc. 80). The calls were often short and involved Rogers complaining about alleged actions by President Biden, the FBI, and other politicians. For instance, in a call made on May 15, 2022, he identifies himself and demands to know why nothing has been done about President Biden sharing a bank account with "his fucking son and st[ealing] money from the United States, taking money from China, the Ukraine." (*See* Doc. 82 at 5). He then says "fuck your authority I'll make my own…" (*Id.*). The call is then terminated. (*Id.*). He also often calls the NTOC operators various expletives and uses other insults throughout the conversation, like telling the operator to "go fuck yourself." (*Id.* at 5–8).

On August 12, 2024, Rogers moved to dismiss Count 3, asserting that the statute was unconstitutional as applied to him because it regulated political speech

5

and fails both strict and intermediate scrutiny. (Doc. 76). His arguments largely mirror those he made with respect to Count 2 in his first motion to dismiss.

## II. Legal Standard

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). On a motion to dismiss, the Court is limited to the face of the indictment and must presume the truth of the allegations in the charging instrument. *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996). The Court cannot consider evidence not appearing on the face of the indictment. *Id.*

A motion to dismiss under Rule 12(b) "is appropriately granted when it is based on questions of law rather than fact." *United States v. Schulman*, 817 F.2d 1355, 1358 (9th Cir. 1987). "'[I]f the pretrial motion raises factual questions associated with the validity of the defense, the district court cannot make those determinations.'" *United States v. Schafer*, 625 F.3d 629, 635 (9th Cir. 2010) (quoting *United States v. Shortt Acct. Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986)). Additionally, "[a] defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence." *Jensen*, 93 F.3d at 669 (internal citation and quotation marks omitted).

## III. Analysis

The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. "The hallmark of the protection of free speech is to allow 'free trade in ideas'—even ideas that the overwhelming majority of people might find distasteful or discomforting." *Virginia v. Black*, 538 U.S. 343, 358 (2003) (quoting *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting)). The First Amendment protects symbolic or expressive conduct as well as actual speech. *Id.* "The protections afforded by the First Amendment, however, are not absolute, and [courts] have long recognized that the government may regulate certain categories of expression consistent with the Constitution." *Id.*

The level of scrutiny under which a court analyzes a law impacting speech hinges on whether the law is content-based or content-neutral. "A regulation is content-based when it draws a distinction 'on its face' regarding the message the speaker conveys or 'when the purpose and justification for the law are content based.'" *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1204 (9th Cir. 2018) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 166 (2015)). If a law is content-based, the Court applies strict scrutiny. *Reed*, 576 U.S. at 163–64. Strict scrutiny requires a law to be narrowly tailored to a compelling state interest. *Wasden*, 878 F.3d at 1204. Content-neutral regulations are subject to intermediate scrutiny, as are

7

laws that regulate conduct but incidentally impact speech. *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 624, 662 (1994); *United States v. O'Brien*, 391 U.S. 367, 376–77 (1968). A law survives intermediate scrutiny "if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *O'Brien*, 391 U.S. at 377.

Count 3 charges Rogers under 47 U.S.C. § 223(a)(1)(E) for the phone calls he made to the NTOC between December 2021 and October 2022. Section 223(a)(1)(E) prohibits making "repeated telephone calls or repeatedly initiat[ing] communication with a telecommunications device, during which conversation or communication ensues, solely to harass any specific person[.]"

Rogers lodges an as-applied challenge to the law as used in Count 3 under the First Amendment, as he did with Count 2 on his first motion to dismiss. "An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998).

Rogers argues his actions at issue in Count 3 are protected by the First Amendment because he was engaging in political speech. (Doc. 77 at 8). He avers that the statute, as applied to him, cannot survive strict scrutiny because "the interest

8

in protecting public officials from annoying, harassing, or even verbally abusive political speech" is "not at all compelling." (*Id.* at 9). He also contends that even if the Court determines the statute is content-neutral and applies intermediate scrutiny, the statute still violates the First Amendment because the statute is not "narrowly drawn" to "exclud[e] from its scope those like Mr. Rogers who intend to engage in public or political discourse[.]" (*Id.* at 10–11).

The Government responds that Count 3 "clearly charges Rogers with making repeated calls solely to harass" and "[t]hus the charge targets Rogers'[s] conduct, not his speech." (Doc. 82 at 13). Because the charge targets conduct and not speech, the Government argues that First Amendment does not apply, as the Court held with respect to Count 2 in its order on Rogers's first motion to dismiss. (*Id.*).

The Court agrees with the Government that, like Count 2, Count 3 purely targets Rogers's conduct, not his speech, and therefore is constitutional. As explained in the Court's order on Rogers's first motion to dismiss, "[l]aws or policies that target conduct, but that burden speech only incidentally, may be valid." *United States v. Waggy*, 936 F.3d 1014, 1017 (9th Cir. 2019). Though the Ninth Circuit has not decided whether § 223 targets speech or conduct, *United States v. Stahlnecker*, No. 20-50173, 2021 WL 5150046, at *3 (9th Cir. Nov. 5, 2021), the Ninth Circuit approvingly cited a Third Circuit case holding that § 223 constitutionally criminalizes conduct—namely the placement of interstate telephone

9

calls to harass, abuse, or annoy—in concluding that a similar Washington state statute[2] was constitutional, *Waggy*, 936 F.3d at 1019–20 (citing *United States v. Lampley*, 573 F.2d 783, 787 (3d Cir. 1978)). The Court held in its previous order that *Waggy*'s citation to the Third Circuit's opinion in *Lampley* strongly indicated that the Ninth Circuit would consider § 233(a)(1)(E) as constitutionally criminalizing conduct, rather than speech, and adopted *Waggy* and *Lampley*'s reasoning. (Doc. 40 at 11). The Court also rejected Rogers's reliance on *Popa*, as "*Waggy* rejected *Popa*'s analysis as 'against the great weight of authority,' including that in the Ninth Circuit." (*Id.* (citing *Waggy*, 936 F.3d at 1018–19, 1019 n.5)).

As Rogers's challenge to Count 3 is substantively identical to his challenge to Count 2, the Court applies the same reasoning and holds that Count 3 constitutionally criminalizes Rogers's conduct rather than his speech. For Rogers to be found guilty of Count 3, the jury must conclude that Rogers placed the calls to the NTOC with the sole intent to harass the person at the called number. (*See id.* at 11). "[T]hough the nature of the ensuing conversation and whether it contains harassing language

---

[2] The Washington statute at issue in *Waggy*, Washington Revised Code § 9.61.230(1), provides, in relevant part:
"(1) Every person who, with intent to harass, intimidate, torment or embarrass any other person, shall make a telephone call to such other person:
(a) Using any lewd, lascivious, profane, indecent, or obscene words or language, or suggesting the commission of any lewd or lascivious act; or
(b) Anonymously or repeatedly or at an extremely inconvenient hour, whether or not conversation ensues; or
(c) Threatening to inflict injury on the person or property of the person called or any member of his or her family or household;
is guilty of a gross misdemeanor ...."

can be relevant to the question of intent, it also 'can have no bearing on the constitutionality of the section since its narrow requirement precludes the proscription of mere communication.'" (*Id.* at 10 (citing *Lampley*, 573 F.2d at 787; Karl Oakes, 86 *Corpus Juris Secundum*, § 180 (March 2024) ("Harassing language in the ensuing conversation is not required" under § 223(a)(1)(E))). "'That Defendant included some criticism of the government does not necessarily imbue his conduct with First Amendment protection.'" (*Id.* at 11 (citing *Waggy*, 936 F.3d at 1019)).

## IV. Conclusion

IT IS SO ORDERED that Defendant Richard Lee Rogers's Motion to Dismiss Count 3 of the Superseding Indictment (Doc. 76) is DENIED.

DATED this 11th day of September, 2024.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge