IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> RICHARD LEE ROGERS, <br><br> Defendant. | CR 23-112-BLG-SPW <br><br><br> ORDER |

Before the Court are two motions in limine filed by Defendant Richard Lee Rogers. (Docs. 35, 78). For the following reasons, the Court denies Rogers's First Motion in Limine (Doc. 35) as moot. As to his Second Motion in Limine (Doc. 78), the Court grants the motion in part, denies it in part, and reserves ruling on the remainder of it. The Court will hold a hearing during the pretrial conference on the issue it reserves ruling on.

I.  **Background**

Rogers was charged on September 21, 2023, with one count of threatening to injure and murder a member of the United States Congress in violation of 18 U.S.C. § 115(a)(1)(B), (b)(4) (Count 1), and one count of making harassing telephone calls in violation of 47 U.S.C. § 223(a)(1)(E) (Count 2). (Doc. 2). Count 2 stems from a "high volume" of phone calls Rogers allegedly made to then-Speaker of the U.S. House of Representatives Kevin McCarthy's office throughout the morning and

1

afternoon of February 3, 2023. Count 1 targets one of those calls—which was not recorded—in which Rogers supposedly threatened to injure and/or harm McCarthy. Rogers disputes that he made such threats. The Government expects the staff aide who took the call to testify that Rogers made the threats at issue in Count 1.

On January 22, 2024, the Government filed a Notice of Intent to Offer Evidence Under Rule 404(b). (Doc. 20). That evidence consisted of recordings of about 22 calls between Rogers and the FBI's National Threat Operations Center ("NTOC") that occurred between May 2022 and October 2022. (*Id.* at 4). The Government intended to use those recordings to corroborate the staff aide's recollection of the call by showing Rogers's "particular penchant for using specific language in his conversations when he is agitated." (*Id.* at 12). On April 1, 2024, Rogers moved to exclude the recordings. (Doc. 35).

Before the Court ruled on Rogers's motion, the Government filed a Superseding Indictment adding an additional count of making harassing telephone calls in violation of 47 U.S.C. § 223(a)(1)(E) (Count 3). (Doc. 43). Count 3 alleges Rogers made such harassing phone calls between December 2021 and October 2022. (*Id.* at 2–3). According to the parties' briefing, Rogers called the NTOC's public tip line at least 150 times between December 2021 and October 2022, the recordings of which are filed with the Court. (*See* Doc. 77 at 2 & n.1; Doc. 82 at 5; Doc. 80). It appears these calls encompass the calls at issue in Rogers's first motion in limine.

2

(*See* Doc. 20 at 3 & n.1 (explaining that toll records from Rogers's phone show he had made more than 100 calls to the NTOC between December 2021 and October 2022, that the NTOC only made 22 of the recordings of the calls available, and that the Government expected NTOC to provide about 150 more in the coming days)).

At trial, for Rogers to be found guilty on Count 1, the Government must prove: (1) Rogers, (2) threatened to assault, kidnap, or murder, (3) a United states official, judge, or federal law enforcement officer, (4) with intent to impede, intimidate, interfere with, or retaliate against that official or officer, (5) while the official or officer was engaged in or on account of the performance of his official duties. *United States v. Orozco-Santillan*, 903 F.2d 1262, 1265 (9th Cir. 1990), *overruling on other grounds recognized by United States v. Hanna*, 293 F.3d 1080, 1088 n.5 (9th Cir. 2002); Ninth Cir. Jury Instructions 8.15, Manual of Model Crim. Jury Instructions, at 188 (2024). The Government also contends that, under a 2023 Supreme Court case, it must prove Rogers acted recklessly in transmitting the threat, meaning with a conscious disregard for the substantial and unjustifiable risk that others could regard the statements as threatening violence. (Doc. 83 (citing *Counterman v. Colorado*, 600 U.S. 66, 73 (2023))).

Counts 2 and 3 require the Government prove: (1) Rogers made telephone calls in interstate or foreign communications; (2) the telephone calls were repeated; (3) during the telephone calls some conversation ensued; and (4) Rogers made the

3

repeated calls solely to harass the person at the called number. 2B Fed. Jury Prac. & Instr. § 69:03 (6th ed.).

## II. Legal Standard

A motion in limine "is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). District courts have broad discretion to make evidentiary rulings conducive to the conduct of a fair and orderly trial. *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996). This wide discretion includes determinations of relevancy and weighing the probative value of proffered evidence. *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008). "To exclude evidence on a motion in limine the evidence must be inadmissible on all potential grounds." *BNSF Ry. Co. v. Quad City Testing Lab., Inc.*, CV 07-170-BLG, 2010 WL 4337827, at *1 (D. Mont. 2010) (citation omitted). Finally, rulings on motions in limine are provisional and "not binding on the trial judge [who] may always change [her] mind during the course of a trial." *Id.* (citation omitted).

## III. Analysis

All evidence must be relevant to be admissible. Fed. R. of Evid. 402. Evidence is relevant if (1) it has any tendency to make a fact more or less probable than it would be without the evidence; and (2) the fact is of consequence in determining the evidence. Fed. R. Evid. 401. Under Rule 403, even if the evidence

4

is relevant, the Court must exclude any evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

A.  *First Motion in Limine*

Rogers's first motion in limine seeks to exclude the 22 recordings of the calls Rogers placed to the NTOC between May 2022 and October 2022 as improper propensity evidence. Evidence of any other crime, wrong, or act that usually would be characterized as propensity evidence only is admissible under Federal Rule of Evidence 404(b)(2) if introduced for a purpose other than to show the defendant's propensity to commit the crime, including proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. As the calls are now the subject of Count 3, the calls no longer are evidence of other acts under Rule 404(b). The motion is denied as moot.

B.  *Second Motion in Limine*

In Rogers's second motion in limine, he seeks exclusion of six categories of evidence:

   1) AT&T phone call records for the phone number 406-855-3892, which Rogers says is a number "tied to" him;
   2) Phone call records from Congressman Kevin McCarthy's office from the morning of February 3, 2023;
   3) Testimony from a NTOC supervisor about NTOC's purpose and function;

5

> 4) Any evidence of phone calls made by Rogers to other entities or individuals that are not the subject of the Superseding Indictment;
> 5) The playing of all 150 NTOC phone call recordings; and
> 6) The text messages from Rogers to FBI Agent Deurmeier that are not relevant to charges.

The Court will address each in turn.

### 1. AT&T Phone Call Log Records

Rogers first argues the Court should exclude all, or alternatively the irrelevant parts, of a log from AT&T of phone calls made between January 2021 and February 8, 2023, by the number 406-855-3892, which Rogers describes as "tied to him." (Doc. 79 at 3–4). The log is 1,402 pages and identifies 21,228 calls. (Doc. 81). The log lists the dates of the calls, connection times, the duration of the calls, and the originating and terminating numbers involved in the calls. (*Id.*). A key produced by AT&T to interpret the log explains that a "call may show up on one or more report[s][,] however AT&T has no ability to definitively state or correlate calls as being the same transaction. You may infer any conclusions based on your own analysis of the records." (Doc. 79-1 at 6).

Rogers makes four arguments with respect to the AT&T log. First, he asserts the entire log should be excluded because it requires an expert witness to interpret, and the Government has not noticed an expert witness. (Doc. 79 at 6–9). Rogers contends that many of the call entries in the log appear to be duplicative, given the key's caveat about the log, and given that some calls in the log from Rogers's

6

purported number are listed as having connected during another call. (*Id.* at 8). Thus, according to Rogers, "it is unclear from the log how many calls [he] actually made." (*Id.*; *id.* at 8–9). Because of this, Rogers maintains that introducing the AT&T log will confuse the jury. (*Id.* at 8). He also raises the possibility that the "inaccurate representation" of the number of calls Rogers made "will subvert [his] right to a fair trial and due process." (*Id.* at 9).

Rogers contends the jury also will have to deduce which of the 150 recordings of Rogers's calls to the NTOC correspond to the calls in the log without sufficient information to do so. (*Id.* at 6). Rogers explains that the Government's list of the 150 recorded calls, contained in the Affidavit of Authenticity (Doc. 79-2) identifies each call by name and date but does not specify the time they were placed. (Doc. 79 at 6). According to Rogers, the jury will be "forced to hastily surmise, based on the NTOC recording lengths, what AT&T call or calls might have applied to a NTOC recording," which may "not [be] possible to do" and would confuse the jury. (*Id.*).

Rogers also seems to assert that the introduction of the log would be cumulative with respect to Count 3 because the Government can use the recordings of the NTOC calls to show that Rogers called the FBI. (Doc. 79 at 5–6). He last contends that, at minimum, the calls not made to McCarthy's office or the NTOC should be excluded as irrelevant. (*Id.* at 5).

7

The Government responds that the log is relevant to proving each count. (Doc. 83 at 8). With respect to Count 1, the Government asserts the log corroborates the staff aide's testimony that Rogers called McCarthy's office from a particular number and issued the threat via phone. (*Id.* at 8). As to Counts 2 and 3, the Government argues the log is "arguably[] the best evidence that the calls" Rogers placed to McCarthy's office on February 3, 2023, and to the NTOC between December 2021 and October 2022 "took place as alleged," which is required to show the first and second elements of the offenses. (*Id.* at 8–9). The Government intends to introduce the logs for Count 2 through the staff aide and the FBI agent who investigated Rogers and for Count 3 through the same FBI agent. (*Id.* at 4).

The Government disagrees that expert testimony is required because caselaw demonstrates that a lay witness may read from a phone record log which phone numbers connected to other phone numbers and at which times. (*Id.* at 9–10 (citing *United States v. Jimenez-Chaidez*, 96 F.4th 1257, 1267 (9th Cir. 2024); *United States v. Williams*, 83 F.4th 994, 995 (5th Cir. 2023); *United States v. Rakestraw*, CR-18-01695-004-TUC, 2023 WL 4558068 (July 17, D. Ariz. 2023))). However, the Government explains that it intends to mitigate any concerns regarding the calls not at issue in the case by having the FBI agent identify and discuss only those calls placed to McCarthy's office and the NTOC. (*Id.* at 10). The Government does not address the potential confusion arising from the log potentially showing duplicative

8

calls or from the lack of explicit correlation between the calls on the Government's list of recordings and the calls on the log.

First, the Court excludes evidence of calls not made to McCarthy's office and the NTOC that appear on the log, as they are not relevant. Second, the Court agrees with Rogers that the reliability of the log is unclear. Since, as the key explains, some calls may appear as duplicates, and even AT&T "has no ability to definitely state or correlate calls as being the same transaction," the log may not be able to reliably demonstrate that Rogers's purported number called McCarthy's office and the NTOC and that calls resulted in a conversation between the caller and receiver. (Doc. 79-1 at 6). Because of this caveat and the Government's failure to respond to Rogers's arguments on these points, a hearing at the pretrial conference is necessary to determine the admissibility of the relevant portions of the log.

### 2. *Phone Call Records from McCarthy's Office*

Rogers next objects to the admissibility of the phone call records for 202-225-4000, which is the phone line for McCarthy's office. (Doc. 79 at 3). He argues that the logs are "confusing and opaque" because, in addition to the record of one call coming from Rogers's purported phone number, the log lists several calls from a source number of "Undefined" and other unrelated numbers. (*Id.* (citing Doc. 79-3)). According to Rogers, the Government has not explained how the log is properly interpreted given these other entries. (*Id.* at 10).

The Government responds that it only intends to use the record of the one call from Rogers's purported phone number to corroborate the staff aide's testimony that he received the threatening call alleged in Count 1 during a particular timeframe on February 3, 2023. (Doc. 83 at 10–11). It does not intend to link any calls listed as undefined with Rogers's phone number. (*Id.* at 11).

As Rogers does not dispute the admissibility of the entry in the log listing Rogers's purported phone number, and the Government does not intend to use the other entries, the Court denies the motion as to the entry listing Rogers's purported phone number and grants the motion as to all other entries.[1]

### 3.   *Testimony from the NTOC Employee*

Rogers next maintains that the testimony of a NTOC employee about the general purpose of the NTOC should be excluded for three reasons. First, Rogers asserts that the supervisor has not had any involvement with Rogers. (*Id.*). Second,

---

[1] Rogers mentions that the Government has not provided a notice of an expert to explain the log of phone calls to McCarthy's office but does not otherwise argue that an expert is necessary. To the extent Rogers intended to make such an argument, the Court disagrees. The average person is familiar with the basics of cell phone records. Further, reading from the log, in tandem with the key, which phone number placed a call and which phone number received it at what time and date does not require specialized knowledge. *See Rakestraw*, 2023 WL 4558068, at *2 (holding that testimony regarding which phone numbers connected to other phone numbers at which times based on cell phone records obtained from various cell service providers was fact, not expert, testimony); *see also Jimenez-Caidez*, 96 F.4th at 1267 (allowing a lay witness to testify about GPS location information extracted from a cellphone by law enforcement because GPS information was readily available and understandable to the general public, the extraction required no specialized process, the data extracted was presented in a legible format understandable to a lay person, and the testimony was based on perception of the data report, not specialized knowledge).

the Government has not provided Rogers with the supervisor's contact information—"thus limiting the defense's ability to investigate or even interview the witness prior to trial"—his resume, or any reports regarding his testimony. (*Id.*). Rogers maintains that this lack of information would infringe on his due process right to effectively cross-examine the supervisor. (*Id.* at 11). Last, Rogers asserts that the supervisor's testimony on background information about the NTOC is based on his "unique knowledge, skill, experience, training and/or education in regard to NTOC," and therefore beyond the scope of a lay witness. (*Id.*). The Government has not provided any notice for this expert, so his testimony is inadmissible. (*Id.*).

The Government responds that the witness, Patrick McGahan, is not intended to be a fact witness and therefore was not interviewed about his involvement, if any, with Rogers or asked to produce a report. (Doc. 83 at 13). The Government avers that it is aware of no caselaw, and nor did Rogers cite any, that would require this kind of witness to produce a report. (*Id.*). The Government also explains that it provided the defense with the witness's name and his title (Supervisory Threat Intake Specialist), and asked McGahan if he would participate in a pretrial interview with the defense, which he declined. (*Id.* at 12 (citing Doc. 83-1)). As McGahan declined the interview, the Government explains that it provided the defense with online resources to learn more about the NTOC and its functions. (*Id.* (citing Doc. 83-1)). Last, the Government disagrees that McGahan is an expert witness because his

testimony about the purpose and function of the NTOC is based on his experience working there, and the Government will not ask him to render any opinion about the case. (*Id.* at 13).

The Court denies the motion as to McGahan's testimony. As an initial matter, McGahan's testimony is proper for a lay witness. Federal Rule of Evidence 701 allows a lay witness to offer opinions that are "(a) "rationally based on the witness's perception," (b) 'helpful' to the jury, and (c) 'not based on scientific, technical, or other specialized knowledge within the scope of' expert testimony." *United States v. Gadson*, 763 F.3d 1189, 1206 (9th Cir. 2014) (quoting Red. R. Evid. 701). "A lay witness's opinion testimony necessarily draws on the witness's own understanding, including a wealth of personal information, experience, and education[.]" *Id.* Accordingly, lay opinion testimony includes knowledge obtained through the witness's profession. *See United States v. Crawford*, 239 F.3d 1086, 1089–91 (9th Cir. 2001) (permitting employee witness to offer lay testimony under 701 about UCLA's definition of "affiliated organization" where opinion was based on his experience with UCLA's policies and usage of term); *see also United States v. Perryman*, 23cr117, 2024 WL 515248, at *1–*3 (S.D.N.Y. Feb. 4, 2024) (applying similar test in holding that the testimony of a FDA employee about the operations and organization of the FDA was lay testimony because the witness was familiar with such topics from her position with the agency, was not going to offer opinions

about defendant's conduct, and would be providing the jury with "information that will provide context to better understand the terms, procedures and codes relevant to other witness testimony.").

Since the Government represents that McGahan's testimony about the functions and purpose of NTOC will be based on his experience working there, it is rationally based on his perception, not specialized knowledge. It also will be helpful to the jury to understand the functions of the agency Rogers was calling. Further, he does not intend to express any opinions about the case. Thus, McGahan is properly characterized as a lay witness, not an expert witness, and his testimony is admissible without a notice of expert testimony. Because he is not an expert witness, he was not required to produce a report. *See* Fed. R. Civ. P. 26(a)(B) ("if the witness is one retained or specially employed to provide expert testimony in the case," the expert must provide a written report"). Last, the Government's exhibit shows it provided the defense McGahan's name, title, and email address. (Doc. 83-1). McGahan declined an interview with the defense, and Rogers provided no caselaw or rule requiring him to be subject to an interview prior to trial.

    *4.    Evidence of Phone Calls Made by Rogers to Other Entities and Persons*

Rogers next argues that any evidence of calls Rogers made to other entities not named in the Superseding Indictment should be excluded because they are irrelevant and the Government has not provided notice under Rule 404(b) of its intent

13

to introduce it as evidence of other acts. (Doc. 79 at 11). The Government responds that it does not intend to discuss any other calls that Rogers made to entities other than McCarthy's office or the NTOC in its case-in-chief, but asks to reserve the right to discuss the admissibility of the evidence in a side bar if it becomes relevant on cross-examination. (Doc. 83 at 14).

The Court grants the motion as to the introduction of the calls Rogers made to entities other than McCarthy's office and the NTOC in the Government's case-in-chief. The Court will allow the Government to argue for its admissibility if it becomes relevant on cross-examination.

### 5.   *Playing all 150 NTOC Phone Call Recordings*

Roger next asks the Court to prohibit the Government from playing all 150 recordings of the calls Rogers purportedly made to the NTOC between December 2021 and October 2022, which are at issue in Count 3. (Doc. 79 at 12). Rogers argues playing all 150 calls will be "exhausting" and "obfuscate" that the phone calls occurred over the course of 10 months, not "in a condensed period." (*Id.* at 12–13). The Government responds that it only plans to play a subset of the calls for the jury during trial, but that the Court should admit all 150 calls because "the sheer volume of the calls may be relevant to the question" of whether Rogers had the intent to harass when he initiated the phone calls. (Doc. 83 at 15). Additionally, the Government notes that the content of the calls may be relevant to ascertain Rogers's

intent in making the calls, and so the jury should have access to all 150 calls. (*Id.* at 14–15 (citing *United States v. Lampley*, 573 F.2d 783, 787 (3d Cir. 1978))).

The Court allows the admission but not the playing of all 150 calls. The Court agrees with the Government that the volume of calls, collectively, are evidence of Rogers's intent in making them. Additionally, under *Lampley*, which the Court previously followed as persuasive, the content of the calls may be relevant to the question of intent. (*See* Doc. 40 at 9–11). At the same time, the playing of all 150 calls would be cumulative. As such, the motion is granted as to the playing of all the calls but denied as to their admission.

      6.    *Text Messages Between Rogers and FBI Agent Deurmeier*

Rogers last asks the Court to exclude the text messages Rogers sent to the FBI Special Agent investigating him that are not relevant to Counts 1, 2, and 3. (Doc. 79 at 13–14 (citing Doc. 79-4)). In addition to their irrelevancy, Rogers argues they should be excluded because they are more prejudicial to him than probative of the elements of the crimes alleged due to the inflammatory language used. (*Id*). The Government responds with a notice of intent to present the texts not at issue in the charged counts as evidence of Rogers's "motive, intent and plan to engage in repeated communications to harass" under Rule 404(b)(2). (*Id.* at 15–16).

The Court concludes the texts are admissible under Rule 404(b)(2) to show Rogers's motive, intent, and plan to engage in harassing communications. Rule

15

404(b) prohibits the admission of any other crime, wrong, or act "to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character." Fed. R. Evid. 404(b)(1). This type of evidence is also known as propensity evidence. Such evidence may be admissible for another purpose, including proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b)(2). The rule is "one of inclusion which admits evidence of other crimes or acts relevant to an issue in the trial, except where it tends to prove *only* criminal disposition." *United States v. Rocha*, 553 F.2d 615, 616 (9th Cir. 1977) (emphasis in original).

The Ninth Circuit applies a four-part test to determine the admissibility of evidence under Rule 404(b): (1) whether there is sufficient evidence to conclude that the prior act occurred; (2) whether the evidence is too remote in time; (3) whether the offense and act are similar; and (4) whether the prior act is offered to prove a material element of the offense. *United States v. Kindred*, 931 F.2d 609, 612–13 (9th Cir. 1991). "Evidence of other crimes admitted under Rule 404(b) even if admissible still must be weighed for its probative value and potential for prejudice under Rule 403." *United States v. Pitts*, 6 F.3d 1366, 1371 (9th Cir. 1999).

The text messages satisfy the four-part test, as the Court has screenshots of the text messages, the text messages are more recent than the acts in Count 3 and

shortly before the acts in Count 2, the text messages and the acts in the offense involve Rogers supposedly repeatedly communicating with government officials about similar topics and using similar language, and the Government intends to use the texts to show that Rogers would repeatedly communicate with those government officials to harass them, which are required elements of Counts 2 and 3.

The texts also are not more prejudicial than probative for two reasons. First, the content of the texts—especially Rogers's "political views" (Doc. 79 at 14)—is not the Government's primary focus in introducing the texts. Rather, as the Government states, it intends to use the texts to show Rogers had a habit of engaging in repeated communications to harass. Second, the texts are no more prejudicial to Rogers than the recordings of his calls to the NTOC.

Accordingly, the texts are admissible under Rules 404(b) and 403.

## IV. Conclusion

IT IS SO ORDERED that Rogers's First Motion in Limine (Doc. 35) is DENIED as moot.

As to Rogers's Second Motion in Limine (Doc. 78), IT IS FURTHER ORDERED that:

(1) The motion is DENIED as to the portions of the call log from AT&T showing calls made from Rogers's purported number to entities/persons other than McCarthy's office and the NTOC. The Court reserves ruling

17

on Rogers's motion as to the log from AT&T of the calls made to McCarthy's office and the NTOC and will hold a hearing on the issue at the pretrial conference;

(2) The motion is DENIED as to the entry of the call log from McCarthy's office listing Rogers's purported phone number and is GRANTED as to all other entries on the log;

(3) The motion is DENIED as to the testimony of NTOC Supervisory Threat Intake Specialist Patrick McGahan;

(4) The motion is GRANTED as to all evidence of calls Rogers made to other governmental entities.

(5) The motion is DENIED as to the admissibility of all 150 recordings of the calls Rogers supposedly made to the NTOC and GRANTED as to the playing of all 150 recordings at trial; and

(6) The motion is DENIED as to the text messages between Rogers and FBI Special Agent Deurmeier.

DATED this 16th day of September, 2024.

SUSAN P. WATTERS
United States District Judge