**JEFFREY K. STARNES**
Assistant U.S. Attorney
U.S. Attorney's Office
P.O. Box 3447
Great Falls, MT 59403
119 First Ave. N., Suite 300
Great Falls, MT 59401
Phone:  (406) 761-7715
FAX:  (406) 453-9973
E-mail:  Jeff.Starnes@usdoj.gov

ATTORNEY FOR PLAINTIFF
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| UNITED STATES OF AMERICA, Plaintiff, vs. RICHARD LEE ROGERS, Defendant. | CR 23-112-BLG-SPW  BENCH BRIEF:  COUNTERMAN V. COLORADO |
|---|---|

## INTRODUCTION

In response to the discussion at the charge conference in this case, the United States submits this brief on the impact of *Counterman v. Colorado*, 600 U.S. 66 (2023), and why the court should give Instruction 37 with the inclusion of a third element to address the mens rea required to complete the offense as proposed by the United States.

1

## FACTS OF COUNTERMAN

In *Counterman*, the Court summarized the facts as follows:

From 2014 to 2016, petitioner Billy Counterman sent hundreds of Facebook messages to C.W., a local singer and musician. The two had never met, and C.W. never responded. In fact, she repeatedly blocked Counterman. But each time, he created a new Facebook account and resumed his contacts. Some of his messages were utterly prosaic ("Good morning sweetheart"; "I am going to the store would you like anything?")—except that they were coming from a total stranger. Others suggested that Counterman might be surveilling C. W. He asked "[w]as that you in the white Jeep?"; referenced "[a] fine display with your partner"; and noted "a couple [of] physical sightings."

And most critically, a number expressed anger at C. W. and envisaged harm befalling her: "Fuck off permanently." "Staying in cyber life is going to kill you." "You're not being good for human relations. Die."

The messages put C. W. in fear and upended her daily existence. She believed that Counterman was "threat[ening her] life"; "was very fearful that he was following" her; and was "afraid [she] would get hurt." As a result, she had "a lot of trouble sleeping" and suffered from severe anxiety. She stopped walking alone, declined social engagements, and canceled some of her performances, though doing so caused her financial strain. Eventually, C. W. decided that she had to contact the authorities.

*Counterman*, 66 U.S. at 70 (internal citations omitted).

Counterman was charged under a Colorado statute that made it unlawful to "repeatedly ... make any form of communication with another person" in "a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person ... to suffer serious emotional distress." *Id.* (citing Colo. Rev. Stat. § 18–3–602(1)(c) (2022)). Counterman moved to dismiss the charge on First

2

Amendment grounds, arguing that his messages were not "true threats" and therefore could not form the basis of a criminal prosecution. *Id.* at 71. In denying the motion, the district court used an objective standard, to find that Counterman's messages were "true threats" and thus were not protected by the First Amendment. *Id.* at 71-72.

The United States Supreme Court eventually granted certiorari because prior to its decision, Courts were "divided about (1) whether the First Amendment requires proof of a defendant's subjective mindset in true-threats cases, and (2) if so, what *mens rea* standard is sufficient *Id.* at 72.

## DISCUSSION

The *Counterman* Court ultimately held that, the First Amendment requires the government to prove in a criminal prosecution for "true threats" that the defendant subjectively understood the threatening nature of his statement. *Id.* at 75. The Court further held, however, that a mental state of recklessness is constitutionally sufficient. "[R]eckless defendants," the Court observed, "have done more than make a bad mistake. They have consciously accepted a substantial risk of inflicting serious harm." *Id.* at 80; *see id.* at 80-82 (explaining that recklessness "offers 'enough "breathing space" for protected speech,' without sacrificing too many of the benefits of enforcing laws against true threats"). Accordingly, under the First Amendment, the government need only "show that the defendant

consciously disregarded a substantial risk that his communications would be viewed as threatening violence" to establish criminal liability for true threats; it "need not prove any more demanding form of subjective intent to threaten another." *Id.* at 69.

In this case, as noted in discussions at the Charge Conference, there is a Ninth Circuit Model Jury Instruction that addresses the elements the United States must prove to find a defendant guilty; however, that instruction is silent as to what mens rea is required to complete the offense. *See* Ninth Circuit Model Criminal Jury Instruction 8.15 (March 2022 edition)(*updated June 2024*).

In this case, defendant Rogers is charged with issuing a true threat to injure and kill a Member of the United States Congress. Although the defendant has repeatedly asserted that he did not subjectively intend to threaten anyone, his subjective intent in making that communication is irrelevant as to the elements the United States must prove in order for the jury to convict him of Count 1.

*Counterman* controls cases involving true threats like this one. Because the Supreme Court holds that recklessness is sufficient to prove a true threat, and Rogers is charged with issuing a true threat, instructing the jury on the mens rea necessary to complete the offense will ensure that the jurors do not misapply the law. Thus, the Court should give Instruction 37 as proposed by the United States.

DATED this 1st day of October 2024.

                                        JESSE A. LASLOVICH
                                        United States Attorney

                                        /s/ *Jeffrey K. Starnes*
                                        JEFFREY K. STARNES
                                        Assistant U.S. Attorney

                                        /s/ *Thomas K. Godfrey*
                                        THOMAS K. GODFREY
                                        Assistant U.S. Attorney

## CERTIFICATE OF COMPLIANCE

I certify that the Response of the United States to Defendant's Motion to Suppress Evidence is in compliance with L. R. 7.1(d)(2) and CR 12.1. The brief's line spacing is double spaced, with a 14-point font size and contains less than 6,500 words. (Total number of words: 821, excluding tables and certificates).

DATED this 1st day of October 2024.

>                           JESSE A. LASLOVICH
>                           United States Attorney
>
>                           */s/ Jeffrey K. Starnes*
>                           JEFFREY K. STARNES
>                           Assistant U.S. Attorney
>
>
>                           /s/ *Thomas K. Godfrey*
>                           THOMAS K. GODFREY
>                           Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2024, a copy of the foregoing document was served on the following persons by the following means:

 1-3   CM-ECF
_____Hand Delivery
_____Mail
_____Overnight Delivery Service
_____Fax
_____E-Mail

1.	CLERK, UNITED STATES DISTRICT COURT

2.	Evangelo Arvanetes
	Assistant Federal Defender
	Federal Defenders of Montana
	Counsel for the Defendant

3.	Edward Werner
	Assistant Federal Defender
	Federal Defenders of Montana
	Counsel for the Defendant