JEFFREY K. STARNES
THOMAS K. GODFREY
Assistant U.S. Attorneys
U.S. Attorney's Office
James F. Battin U.S. Courthouse
2601 Second Ave. North, Suite 3200
Billings, MT 59101
Phone: (406) 657-6101
FAX: (406) 657-6989
Email:  Jeff.Starnes@usdoj.gov
         Thomas.Godfrey@usdoj.gov

ATTORNEYS FOR PLAINTIFF
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| UNITED STATES OF AMERICA, Plaintiff, vs. RICHARD LEE ROGERS, Defendant. | CR 23-112-BLG-SPW SENTENCING MEMORANDUM |
|---|---|

## INTRODUCTION

Richard Rogers threatened to harm an elected official, and repeatedly engaged in placing telephone calls designed solely to harass telephone operators and staff aids who had the misfortune of answering the phone. In many of his

1

calls, he used obscene, vulgar, and sexualized language, and screamed at telephone operators about his political ideology or perceived grievances with the United States government. Despite being told over and over again that his conduct was inappropriate and harassing, Rogers insisted he had a right to treat those with whom he spoke with disrespect and contempt simply because the federal government pays their salary. Rogers' conduct in this case contributes to a rising and concerning myth that the First Amendment somehow gives a person complete immunity from all consequences as long as their speech or conduct is framed as "political protest," or that anyone who happens to work for the federal government, in any capacity, is a fair target for harassment or threats of harm.

There is a need in this case for the Court craft a sentence that sends a strong deterrent message to Rogers, and those who hear about this case, that there are limits to the protections of the First Amendment. Here, Rogers crossed the line. He should be sentenced accordingly. The United States recommends a concurrent custodial sentence for all three counts of 24 months.

## OUTSTANDING OBJECTIONS TO THE PRESENTENCE REPORT (PSR)

The United States has no objections to the final PSR. *See* Addendum to the PSR.

Rogers maintains six objections to the PSR. *See id*. First, he generally disputes the evidence that was presented at his trial as laid out in PSR ¶¶ 8-24. *See*

2

*id.* The United States agrees with the Probation Officer that the information contained in those paragraphs contain the offense conduct as presented at trial and is fairly included in the PSR. The Court should deny Rogers' First objection.

Second, Rogers disputes the four-level enhancement to his base offense level, found at PSR ¶ 31, because his offense resulted in substantial disruption of public or governmental functions. *See* PSR Addendum at 2. Pursuant to USSG § 2A6.1(b)(4), a four-level increase is properly applied when, as here, "the offense resulted in (A) substantial disruption of public, governmental, or business functions or services; or (B) a substantial expenditure of funds to clean up, decontaminate, or otherwise respond to the offense[.]"

Although caselaw discussing the enhancement is scant, in *United States v. Dudley*, 463 F.3d 1221 (11th Cir. 2006), the court found the disruption of public or governmental functions was "substantial" and the enhancement properly applied, when the defendant sent a threatening letter to the judge which contained a white powder, later found to be talcum powder, but which caused the closing of half a floor of the state courthouse for two hours, the suspension of judicial business involving the victim judge for longer, interruption of judicial business involving another judge whose chambers were located in the same building, and which required a hazardous materials unit to be deployed and law enforcement personnel to be diverted from their other duties to provide security.

Here, the United States Probation Officer correctly notes that Payson Thomas testified at trial that due to Rogers' repeated harassing calls placed in early February 2023, the Speaker's Office had to disengage its public access line on both February 3rd and February 6th. PSR ¶ 31; PSR Addendum. Consequently, no member of the general public could contact the Speaker's office during that time. The conduct thus substantially disrupted public and governmental services to the Speaker's constituents and the general public. The enhancement is properly applied. Rogers's second objection should be denied.

Third, Rogers asserts he should receive a two-point reduction to his offense level because he meets all criteria for a downward adjustment as a Zero-Point Offender. *See* PSR Addendum at 2. Rogers is wrong.

Pursuant to USSG § 4C1.1(a), if the defendant meets all 10 criteria listed, the reduction is properly applied. However, if a defendant uses violence or credible threats of violence in connection with the offense, no reduction is warranted. *See* § 4C1.1(a)(3). Here, Rogers was convicted in Count 1 of the indictment of threatening to injure an elected official. In finding Rogers guilty, the jury necessarily found, beyond a reasonable doubt, that Rogers used credible threats of violence. Thus, Rogers fails to meet all 10 criteria as a Zero-Point Offender and no reduction is appropriate. The Court should deny Rogers' third Objection.

Fourth, Rogers objects to the inclusion of a prior, nonscorable encounter with law enforcement listed at PSR ¶ 44 because as a nonscorable event, it should not be included. The PSR writer correctly notes that "[i]n determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." USSG § 1B14. *See* 18 U.S.C. § 3661. Here, the United States agrees that the encounter is nonscorable, but that does not mean it has no value to the Court's determination of an appropriate sentence based, in part, on Rogers history and characteristics. The United States asserts ¶ 44 is thus properly included and should remain in the PSR.

Fifth, Rogers objects to the calculation of his total offense level, guideline imprisonment range, his eligibility for probation under the guidelines, and his guideline fine range based on his second and third objections discussed above (the application of the four-level enhancement for substantial disruption included in PSR ¶ 31, and the failure to include a two-level reduction as a Zero-Point offender). As noted in the United States response to Rogers' second and third objections, the guidelines are properly calculated in the final PSR, therefore no change to the guideline calculations are needed and Rogers' objection should be denied.

Sixth, Rogers objects to the imposition of three conditions of supervision or supervised release: (1) that there is insufficient nexus to the offense to require Rogers to obtain mental health treatment; (2) that there is insufficient nexus to the offenses to require Rogers to abstain from alcohol; and (3) that there is insufficient nexus to the offenses to require Rogers to abstain from the use of marijuana.

Here, the evidence presented at trial included a consistent pattern of Rogers' engaging in angry and harassing behavior as well as threats to others. Given his behavior, there is a real possibility that Rogers' suffers from anger management issues, and that he may benefit from counseling or other mental health treatment. While it is true that Rogers reported to the PSR writer that he has never been diagnosed with a metal health condition, *see* PSR ¶ 59, it is unknown if he has ever spoken with a mental health treatment provider or been evaluated for any mental health condition. At the very least, the Court should impose a condition requiring Rogers to be evaluated to determine if he does, in fact, suffer from any mental health condition.

With respect to Rogers' objection to the imposition of a restriction on his use of marijuana and alcohol, the United States will defer to the Court as to whether the imposition of those conditions is appropriate. The United States notes that marijuana remains a federal controlled substance, albeit substantially decriminalized.

## SENTENCING ARGUMENT

Section 3553(a) of Title 18 of the United States Code contains prefatory language —"The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."  Those purposes include the need for the sentence to:

- reflect the seriousness of the offense;
- promote respect for the law;
- provide just punishment for the offense;
- afford adequate deterrence to criminal conduct;
- protect the public from further crimes of the defendant; and,
- provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) sets forwards additional considerations for the Court when imposing an appropriate sentence.  "[T]he nature and circumstances of the offense and the history and characteristics of the defendant" and the "kinds of sentences available" should be considered. 18 U.S.C. § 3553(a)(1),(3).  The Court should similarly consider the sentencing guidelines and policy statements, as well as "the need to avoid unwarranted sentencing disparities."  18 U.S.C. §3553(a)(4),(5),(6). Finally, the Court should consider "the need to provide restitution to any victims of the offense."  18 U.S.C. §3553(a)(7).

Here, a review of Rogers' conduct and, his history and characteristics, his inability to accept responsibility for his actions and his apparent lack of respect for the law, support the need for a term of incarceration. As such, the United States requests a concurrent custodial sentence 24 months of imprisonment.

## A. Offense Conduct

The Court is familiar with the facts of Rogers' offenses. On February 3, 2023, Rogers placed a large number of calls from his home in Shepard, Montana to staff members who worked at the Washington D.C. office of the Honorable Kevin McCarty, then Speaker of the United States House of Representatives. Rogers was upset that the government failed to take action against a Chinese spy balloon that had drifted across Montana.

According to Staff Aide Payson Thomas' testimony at trial, Rogers sounded agitated, and was harassing and swearing at those who answered the phone. Thomas testified that Rogers told those answering the phone that his repeated calling was his "form of civil disobedience" and his "form of protest." Rogers stated he would continue to call until something was done about "the balloon." Thomas recalled that some of Rogers' comments were sexual in nature, and he told Thomas to "suck his dick." Thomas testified that, during one of the calls, Rogers, in reference to then Speaker McCarthy, stated "I'm gonna fucking kill him for not shooting down the Chinese balloon," or words to that effect. Shortly after Rogers

made that statement, Thomas reported the threat and Rogers' repeated harassing phone calls to the United States Capitol Police who, in turn, referred the investigation to the FBI. According to phone records obtained during the investigation and presented at trial, Rogers called the Speaker's office dozens of times on February 3rd before the access line was disconnected due to Rogers' conduct.

Further investigation revealed that Rogers also frequently called the FBI's National Threat Operations Center and repeatedly harassed and berated the operators who answered his calls. Over 150 recordings were introduced into evidence, many depicting Rogers use of indecent and profane language. In one call on September 22, 2022, Rogers told the NTOC operator who answered the phone "Fuck you bitch. Suck my dick."

### B.  Rogers' History and Characteristics

Rogers is 45 years old. He has no criminal history, and reports no problems with his mental or physical health. He reports that he uses marijuana daily. Rogers withdrew from high school in 1997, but completed his GED in 2008. He has a history of stable work throughout s adult life, but is currently unemployed.

### C.  Factors Supporting the United States' Recommended Sentence

As an initial matter, Rogers' threat to injure Speaker McCarthy is serious and must not be taken lightly. His conduct is part of a concerning trend in which

threats, particularly ideologically-motivated threats, against public officials has steadily increased over the last 10 years.  *See* Pete Simi, Gina Ligon, Seamus Hughes, and Natalie Standridge, *Rising Threats to Public Officials:  A Review of 10 Years of Federal Data*, CTC Sentinel, Vol. 17, Issue 5 (May 2024), available at: https://ctc.westpoint.edu/rising-threats-to-public-officials-a-review-of-10-years-of-federal-data/ (last accessed January 16, 2025).  As noted in this article, these type of threats present a serious danger to our system of government.

Moreover, unlike a defendant with a notable history of mental health issues, Rogers reports no concerns with his mental health.  That leads to the troubling conclusion that Rogers' decision to threaten the Speaker and the repeated verbal abuse he lobbed at the Speaker's staff and NTOC operators over a period of several years, was knowing, voluntary, intentional, and without regard for the way his behavior impacted those around him.  In fact, Rogers demonstrated some of these same qualities at trial in this case, in which he was frequently late, repeatedly made outbursts during the United States' presentation of evidence and had to be admonished multiple times by the Court to control his behavior.

Clearly, a custodial term of imprisonment within the established guideline range is needed to both address the seriousness of Rogers' offenses, to send a needed message of deterrence, and to instill in Rogers a respect for the law.

Finally, a guideline term of imprisonment will avoid disparate sentences for similar conduct. In *United States v. Cross*, Cause No. CR 23-101-BLG-SPW (May 2024), the Court sentenced Cross to 30 months of custody for threatening to injure and murder then Senator Jon Tester, a sentence at the top end of the guideline range in that case.

## CONCLUSION

Based on the foregoing, the United States respectfully requests the Court sentence Rogers to a concurrent term of 24 months of imprisonment for all three counts of conviction, followed by a concurrent term of three years of supervised release for Count 1 and one year of supervised release for Counts 2 and 3.

DATED this 16th day of January 2025

        JESSE A. LASLOVICH
        United States Attorney

        */s/ Jeffrey K. Starnes*
        JEFFREY K. STARNES
        Assistant U.S. Attorney

        */s/ Thomas K. Godfrey*
        THOMAS K. GODFREY
        Assistant U.S. Attorney