**DANIEL BALL**
**HENDRICKSON LAW FIRM, P.C.**
208 North Broadway, Suite 324
P.O. Box 2502
Billings, MT 59103-2502
Telephone: (406) 245-6238
Facsimile: (406) 245-6253

Attorney for Defendant

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

- - - - - - - - - - - - - - - - -

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. CR 23-112-BLG-SPW |
| Plaintiff, ) | |
| vs. ) | **DEFENDANT'S SENTENCING MEMORANDUM** |
| RICHARD LEE ROGERS ) | |
| Defendant. ) | |

COMES NOW, the Defendant, Richard Lee Rogers (Richard), through counsel and respectfully provides this *Sentencing Memorandum* in advance of the February 26, 2025 Sentencing Hearing.

Richard Rogers loves his country. Richard is a patriot. The trial testimony demonstrates that Richard believed that the offense conduct was a form of political protest or grievance. There does not appear to have been any true intent to harm or threaten any person. Richard is outspoken related to his concerns about the safety of his fellow Americans. He is outspoken about his concerns for our

1

country. He believed that there were urgent national security issues related to our country that were being ignored. He believed that the only way to bring attention to the issues was to engage in a series of phone calls designed to ensure that the issues weren't simply ignored. The jury issued its verdict, but imprisonment is not the answer.

The United States' request for 24 months imprisonment is excessive. The request for prison time is simply punitive. Richard was convicted of Count 1, Threats to Injure (*assault*) a Member of the United States Congress. The offense is punishable by not more than 6 years imprisonment. Richard was convicted of Counts 2 and 3, Harassing Telephone Calls. The offense is punishable by not more than 2 years imprisonment.

The request for prison time ignores the reality that there is no victim who has been harmed by the offense. The harm caused by this offense primarily relates to the public access line to a congressman being shut down on two separate days. That does not warrant prison time.

The request for prison time ignores the reality that other individuals who have been sentenced for politically-motivated offenses, including offenses of violence, have had their sentences pardoned or commuted. The Government wants to make an example of Richard. But, making an example of Richard is unnecessary and would subject him to unwarranted sentencing disparities. Indeed, the sentencing factors warrant a sentence of supervised release.

Pursuant to Section 3553(a) of Title 18 of the United States Code, the Court shall impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides adequate deterrence, protects the public from future crimes of the defendant, and provides the defendant with needed educational or

vocational training, medical care or other correctional treatment in the most effective manner. See 18 U.S.C. Section 3553(a).

Richard's proposed sentence of supervised release satisfies these sentencing needs.

## I. Richard's Proposed Sentence Reflects the Seriousness of the Offense and Provides Adequate Deterrence

Any felony conviction is serious. Any felony conviction results in life-long consequences for the defendant, both punitive and civil. This is particularly true for a civically-minded and engaged citizen like Richard. However, relative to the type of offenses that this Court typically presides over, this is not an egregiously serious offense. Nobody was harmed in the commission of these telephone crimes. Richard did not engage in serious drug trafficking crimes. Richard did not use firearms in furtherance of drug trafficking crimes. Richard did not engage in child pornography or human trafficking. Richard did not commit a violent assault on another person.

Accordingly, Richard submits that although his felony convictions are serious, they do not warrant the custodial consequences that the precedent offenses usually warrant. Further, the indictment, criminal charges, embarrassment, and felony convictions provide general and specific deterrence. Richard has not engaged in any similar conduct. He has resumed his law-abiding life. And, the public is aware that making phone calls to Washington D.C. from across the country can result in criminal charges if a rash statement is made during the call.

## II. Richard's Proposed Sentence Protects the Public from Future Crimes

The public does not need protection from Richard. Richard has never posed a threat to anybody. Indeed, he was more of a nuisance or annoyance to the NTOC

and the phone call recipients. Richard has no criminal history. He has been an active and beneficial member of the communities he has resided in. He has adjusted his conduct and his forms of his perceived political protest as a result of the investigation and Indictment. The public does not need protection from Richard. Instead, Richard needs to continue refraining from phone calls that are perceived to be threatening or harassing – undersigned counsel is confident that he will continue to refrain from such conduct.

### III. Richard's Proposed Sentence Promotes Respect for the Law

Richard appeared in this case pursuant to a summons. Richard has been released throughout the duration of this case. Richard, a life-long law-abiding citizen, has been convicted of a felony offense. He has been subject to pre-trial supervision. He will be subject to supervised release. The sentence he proposes for his telephonic offenses promotes respect for the law.

### IV. Incarcerating Richard Will Not Provide Richard With Needed Educational or Vocational Training, Medical Care or other Correctional Treatment in the Most Effective Manner

Richard has demonstrated an ability to be a contributing member to society. He is a good parent. There is no documented need for education or vocational training. He is not in need of medical care. He does not need substance abuse treatment. There are no rehabilitative needs that could be served by a custodial sentence.

Richard does not have a substance abuse disorder. He has never been diagnosed with a mental health condition. Thus, Richard is not in need to correctional care or treatment. Further, this is a mitigating factor that bodes well for continued success on supervision.

4

## V. Other Sentencing Factors Support a Supervised Release Sentence

Further, Section 3553(2) sets forth additional considerations for the Court when imposing an appropriate sentence. The Court should consider the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. §3553(a)(1),(3). The Court should consider the sentencing guidelines and policy statements, as well as the need to avoid unwarranted sentencing disparities. 18 U.S.C. §3553(a)(4),(5), (6). Finally, the Court should consider the need to provide restitution to any victims of the offense. 18 U.S.C. §3553(a)(7).

## VI. The Nature and Circumstances of the Offense Do Not Warrant A Prison Sentence

The nature and circumstances of the offense warrant a supervised release sentence. The offense is non-violent. The United States alleges that Richard made a threat to the former Speaker of the House as part of a phone call made from Montana to Washington D.C. The threat Richard made to Staff Aide Payson Thomas, as represented by the Government, is somewhat imprecise. The United States' Sentencing Memorandum notes that Richard stated "'I'm gonna fucking kill him for not shooting down the Chinese balloon,' or words to that effect." See Doc. 133 at page 8. The statement made during the call was not polite. The jury found that the statement was criminal; however, the statement does not warrant a prison sentence.

Indeed, Mr. Thomas was informed by Richard that the phone calls were a "form of civil disobedience," and his "form of protest," and that he would continue calling until something was done about the Chinese Spy Balloon observed floating over Montana. PSR at ¶12. Mr. Thomas' response was to complete a threat assessment form and email it to US Capitol Police. *Id.* at ¶14. The trial testimony indicated that the call was not acted upon immediately.

Although Richard's words as presented at trial may have been strident, it was never his intent to cause harm.

Further, the phone calls were not directed at minors. They were not a series of repeated threatening calls to a vulnerable private person. They were made to the NTOC and the Speaker's office. The calls were made to individuals with training and experience to handle such interactions.

### VII. Richard's History and Characteristics Do Not Warrant Prison

Richard is devoted to his country. He is devoted to his family. His wife notes that he does not normally speak to people in the manner reflected by his phone calls.

Richard is the unique individual standing before the Court for sentencing with no juvenile convictions, no adult convictions, and a Total Criminal History Score of 0. Richard has demonstrated an ability to follow the law. Placing Richard in a custodial setting would be counter-productive. As these offenses are non-violent and constitute his only real interaction with the criminal justice system. The appropriate course of action would be to afford Richard with an opportunity to succeed on supervised release.

The goals of rehabilitation have been served in this case. Richard has performed well on supervised release. He is working. He is following the law. He is compliant with the terms of his pre-trial supervision. He is the citizen that a custodial sentence and rehabilitation is designed to produce.

### VIII. The Sentencing Guidelines Do Not Call for a Lengthy Term of Custody

The United States Sentencing Guideline range is only 21-27 months, even if Richard's objections to the Pre-Sentence Report are all denied. Indeed, absent the enhancement applied by the PSR due to the phones at the Speaker's office

being shut off on parts of two days, Richard's advisory guideline range would only be 10-16 months. His advisory guideline range would further be reduced to 0-6 months if he simply provided a perfunctory letter of acceptance of responsibility; however, doing so would compromise a potential appeal. It does not take creative math to create a scenario where he would not be subject to custody even pursuant to the USSG.

Thus, Richard is not requesting a substantial variance from the advisory guideline range. The sentencing factors support a variance that forgoes the relatively brief custodial sentence requested by the United States.

### IX. A Prison Sentence Will Result in an Unwarranted Sentencing Disparity

Richard's situation can be compared, favorably, to individuals who were convicted for their roles in the January 6, 2021 riot at the United States Capitol Building in Washington, D.C. Many of those individuals were convicted of offenses that constituted armed protest or armed insurrection. Many of those individuals were convicted of offense conduct that actually resulted in physical harm to law enforcement officers. To some, these defendants were criminals. To some, these defendants were protestors.

Regardless of how those individuals are classified, President Donald J. Trump issued the Presidential Action of Granting Pardons and Commutation of Sentences for the offenses related to the events at or near the United States Capitol on January 6, 2021. President Trump granted a full, complete, and unconditional pardon to these convicted, charged, and uncharged offenders. The actions of some of these individuals may have been violent and egregious. Yet, they were pardoned. See e.g. **Exhibit 1**; see also **Exhibit 2**; see also **Exhibit 3**. Yet, the Government seeks to sentence Richard to a sentence more severe than many

individuals who engaged in obviously more serious offense conduct. See **Exhibit 3.** [1] In fact, the January 6th insurrection/riots/protests resulted in 1,575 people being charged with a federal crime. Of those, 1,124 people were sentenced. Only 64% of those people received prison time. The median sentence for those who received prison time, again including violent felony offenses, was 240 days. See **Exhibit 4.**

The actions of some of these individuals may have been more comparable to the conduct Richard was convicted for: rhetoric that the United States considers violent; however, the conduct may also be considered a form of protest speech to some.

Indeed, the context of Richard's calls and statements as presented at trial must be viewed in consideration of the heightened political tensions of the time. The conduct presented at trial occurred in the political environment where President Trump, his family, and his attorneys arguably exhorted conflict and combat due to the position that the 2020 election was illegitimate.

Counsel understands that the Court has ruled on Richard's Motions to Dismiss. Counsel understands that the jury has issued its verdict. These legal disputes are not what is being addressed at sentencing. But, even with an understanding of the decisions of this case, the factual circumstances as outlined in the PSR, and the Government's recitation of the events at issue, it is apparent that Richard is favorably compared to the January 6, 2021 defendants.

---

[1] E.g. Ryan Kelley who was sentenced to 60 days in jail for shouting "This is war, baby!" while encouraging rioters and Dana Jean Bell who was sentenced to 17 months in prison even though she was a particularly disruptive rioter who engaged in "prolonged, abusive, and violent" attacks on law enforcement officers, including one who ultimately took his own life following injuries caused by the insurrection. See **Exhibit 3 at p. 14-15.**

Richard's conduct, as determined by the jury, occurred in Montana. There was no imminent risk to any person. There was no imminent threat. Indeed, the concern related to the calls appeared to be directed at the frequency of the calls as opposed to a need to take swift action to protect Speaker McCarthy. No person was physically harmed. The offending phone call was a brief call that was unrecorded and where the specifics of what was actually said still elude the Government. Indeed, the jury did not convict Richard of a threat to "murder" a member of Congress, it convicted Richard of a threat to "assault" a member of Congress. Thus, although not legally justified, a threat to assault an individual does not warrant a prison sentence.

This distinction also appears to distinguish Richard's case from the *United States v. Cross* case cited by the Government in its Sentencing Memorandum. The United States asserts that Richard should receive a sentence comparable to Mr. Cross, but the circumstances are different. The most obvious difference is that Mr. Cross threatened to murder Senator Jon Tester whereas Richard was found guilty of a threat to *assault* a member of Congress.

## X. There is No Restitution to Provide to Any Victim

The PSR notes that the victim of the offense, has "advised that he will not be submitting a victim impact statement nor a request for restitution." See PSR at ¶25. Thus, this is not a significant factor in this case.

## XI. There Are Numerous Mitigating Factors that Support Supervised Release

There are numerous mitigating factors that apply to Richard as set forth below. These mitigating factors support a sentence below the advisory guideline range. While rendering the Sentencing Guidelines advisory, the Supreme Court preserved a key role for the Sentencing Commission in that district courts must

treat the Guidelines as the "starting point and initial benchmark" in imposing a sentence. *Kimbrough v. United States*, 128 S.Ct. 558, 574 (2007). The circumstances in this case warrant a sentence below the advisory range.

Richard grew up in Sacramento, California. He notes that his environment "seemed indifferent at best and hostile at worst." He was raised in poverty, was considered a minority, and he was vulnerable to a violent neighborhood.

Richard's father was involved in a fatal motor vehicle accident just prior to Richard's birth. This sent the family into a spiral of alcohol abuse and a broken home. Richard's step-father was physically abusive. Richard bounced around from town to town, home to home, with his mother. He never had a stable environment. He did not complete a year of school in the same place during his early years. He moved to and from various cities in California and Nevada: Sacramento, Del Paso Heights, Lake Tahoe, Placerville, Reno, and Las Vegas.

Richard was sent to live with his father when he was 14 years old. Richard's mother no longer wanted Richard or his brother. That environment was harsh, but it provided Richard with the benefit of learning the traits of hard work and resilience. Richard obtained his GED and moved back to Las Vegas.

Richard was able to become a skilled marketer. He became a business owner. Richard became a family man. Richard and his wife Laurie obtained custody of their grandson. He and Laurie became guardians of two young children in 2018 who they ultimately adopted. The family moved to Billings, Montana. He and Laurie obtained guardianship over one of their grandchildren.

Richard's business, Prometheus Marketing, was a casualty of the COVID pandemic. While large corporations received large government bailouts, companies like Prometheus died. Richard also withdrew from college due to the COVID vaccination requirement of any in-person activities. Richard felt as though

his livelihood and his rights were being dissolved. He became more politically aware. Yet, he continued to provide for his family, ultimately obtaining a sales job at Spectrum Communications and doing well.

Richard saw the "Chinese Spy Balloon" incident as an example of his view of the Government's failures and how, in his view, the Government had failed in its responsibility to provide for national security. The Spy Balloon incident was a symbol of government absolution of its duty to the citizens of this country. Richard felt as though he must act. He felt as though he must protest. As a result, he made phone calls. Richard was largely ignored by the operators at the FBI's National Threat Operations Center (NTOC)–they would routinely end the call shortly after it commenced. The contents of his calls to the NTOC were not to be taken literally. Indeed, nobody could take the statements literally. The statements on the calls with a dismissal of authority and the result of frustration over government disregard and government inaction.

Richard lost his job at Spectrum as a result of this case. He lost his next job at Harbor Freight for related reasons. He has suffered financial loss. Yet, he and his wife Laurie, have formed a new business that sells spiritual tools, supplies, and art in an effort to provide for his family and give back to the community.

In sum, Richard has been a contributing member of society for decades. He was convicted for making a series of phone calls. He may not have expressed his protest or grievances in an appropriate way. But, his intent was to help his country in his own eccentric way. There have been no issues since and Richard is the type of person who will be able to work, provide care for his children, and continue to do well.

DATED this 19th day of February, 2025.

                                      /s/ DANIEL BALL
                                      DANIEL BALL
                                      Attorney for Defendant